IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| KATHLEEN S. BANKS, § § | |
| Plaintiff, § § | |
| v. § | Civil Action No. 4:18-cv-00239-BP |
| § | |
| NANCY A. BERRYHILL, § Acting Commissioner of the § Social Security Administration, § § | |
| Defendant. § | |

## MEMORANDUM OPINION

Plaintiff Kathleen S. Banks ("Banks") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("SSA"). Pursuant to the consent of the parties and the order of reassignment dated July 26, 2018 (ECF No. 17), the case has been transferred to the undersigned for the conduct of all further proceedings and the entry of judgment. After considering the pleadings, briefs, and the administrative record, the Court **REVERSES** the Commissioner's decision and **REMANDS** the case for further proceedings.

I. STATEMENT OF THE CASE

Banks applied for DIB and SSI on April 27, 2015, alleging that her disability began on April 26, 2013. (Transcript ("Tr.") 73, 174, 176). The Commissioner initially denied her applications on August 10, 2015 and denied them again on reconsideration on January 19, 2016. (Tr. 108–117, 118–122). Banks requested a hearing that was held before an Administrative Law Judge ("ALJ") on December 20, 2017 in Fort Worth, Texas. (Tr. 31). Banks was represented by

her attorney at the hearing. (*Id.*). And a Vocational Expert ("VE") testified at the hearing. (*Id.*). The ALJ issued a decision on March 20, 2017 finding Banks not disabled. (Tr. 25).

Specifically, the ALJ employed the five-step analysis and established during step one that Banks had not engaged in substantial gainful activity since April 26, 2013. (Tr. 17). At step two, the ALJ determined that Banks had the severe impairments of degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease ("COPD"), peripheral vascular disease, obesity, depression, generalized anxiety disorder, and post-traumatic stress disorder ("PTSD"). (*Id.*). At step three, the ALJ found that Banks did not meet or equal in combination one of the impairments listed in 20 C.F.R. Part 404(p). (*Id.*). Particular to this case, the ALJ determined that Banks retained the residual functional capacity ("RFC") to "understand, remember, and apply detailed instructions, make judgments on detailed work related decisions, and concentrate, persist, and maintain pace. She can respond and interact appropriately to supervision, coworkers, and respond appropriately to work pressures and changes in the work setting, but can have only occasional face-to-face contact with the public." (Tr. 19). At step four, the ALJ determined that Banks could not perform any past relevant work. (Tr. 23). And at step five, the ALJ decided that Banks had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy that she could perform. (Tr. 23–24). Thus, the ALJ ruled Banks had not been disabled from April 26, 2013 through the date of his decision on March 20, 2017. (Tr. 24).

Banks sought review from the Appeals Council, which denied her request for review on January 30, 2018. (Tr. 1–6). The ALJ's ruling is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he

Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II. FACTUAL BACKGROUND

According to Banks' pleadings, testimony at the administrative hearing, and the administrative record, Banks was 58 years old on the alleged disability onset date, and 62 years old at the time of the administrative hearing. (Tr. 33, 36). She never graduated from high school, nor received a GED. (Tr. 37). Banks described her past work as a field service technician scheduler, operator, and coordinator. (Tr. 37–39). Banks asserts that the combination of her physical and mental impairments render her disabled under the SSA. (Tr. 72–73).

## III. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern DIB and SSI benefits. *See* 20 C.F.R. Pt. 404 (DIB); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and the SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).

"Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197 F.3d 197, 197-98 (5th Cir. 1999); 20 C.F.R. § 404.1520(f). "The claimant bears the burden of showing that [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC—"the most [a claimant] can still do despite [her] physical and mental limitations." *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "It is more than a mere scintilla and less than a preponderance." *Id.* "A finding of no substantial evidence is

appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## IV.    DISCUSSION

Banks raises a single issue on appeal. She claims that the ALJ's failure to weigh, consider, or discuss the medical opinions from consultative psychologist Donna Campbell, Psy.D. and non-examining state agency psychological consultant ("SAPC") Veena Ghai, M.D. was harmful error which requires reversal of the Commissioner's decision.

**A.    The ALJ's failure to consider the medical opinions of Drs. Campbell and Ghai was error.**

It is well established that an ALJ should give the opinion of a treating physician controlling weight if (1) medically acceptable clinical and laboratory diagnostic techniques support the opinion and (2) the opinion is not inconsistent with other substantial evidence in the record. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); 20 C.F.R. § 404.1527(c)(2). But treating physician opinions are not the only opinions that must be considered by the ALJ. In rendering findings, the ALJ must consider all medical opinions in determining the disability status of a claimant. 20 C.F.R. §§ 404.1527(b), 416.927(b). Findings of fact made by a state agency medical and psychological consultant, like Dr. Ghai, regarding the nature and severity of an individual's impairments are treated as expert opinion evidence (from non-examining sources) at both the administrative hearing and Appeals Council levels of review. 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-6p, 1996 WL 374180, at *2–4 (S.S.A. July 2, 1996). Under SSR 96-6, the

ALJ may not ignore state agency physician and psychologist opinions and must explain the weight given to these opinions in the ALJ's decision. SSR 96-6p, 1996 WL 374180, at *2. Likewise, opinions from examining physicians must be considered and are generally given more weight than a medical opinion from a non-examining source. *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017). "And fundamentally, '[t]he ALJ cannot reject a medical opinion without an explanation.'" *Id.* (citing *Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir. 1980)). Although Drs. Campbell's and Ghia's medical opinions are non-treating source opinions, the ALJ must still have considered them when making his decision.

The Commissioner argues that Drs. Campbell's and Ghia's medical opinions were considered by the ALJ. Specifically, the Commissioner cites to boilerplate language made in the ALJ's decision. They are: (1) "[t]he undersigned has also considered opinion evidence in accordance with . . . 20 CFR 404.1527 and 416.927," (2) "[a]fter careful consideration of the entire record," and "the above [RFC] assessment, which is supported by the medical evidence, the State agency medical consultants' opinions, and the record as a whole." (Tr. 17, 19, 23). But boilerplate language "about carefully considering the entire record does not constitute an explanation for rejecting a medical opinion." *Id.* at 761. Although the ALJ stated that he considered the entire record and opinion evidence in accordance with the Commissioner's regulations, the ALJ's decision neither cited nor discussed with any specificity the medical opinions of Drs. Campbell or Ghia. Thus, the ALJ appears to have ignored or failed to consider them. *Davidson v. Colvin*, 164 F. Supp. 3d 926, 942 (N.D. Tex. 2015).

The Commissioner attacks the relevance of the medical opinions and argues that Dr. Campbell's medical opinion predates Banks' alleged disability onset date by almost two years and her applications for benefits by almost four years, citing to 20 C.F.R. §§ 404.1512(d)(2),

6

416.912(d)(2). (ECF No. 18 at 8). These regulations discuss the Commissioner's responsibility to develop a claimant's medical history. *Id.* ("By 'complete medical history,' we mean the records of your medical source(s) covering at least the 12 months preceding the month in which you file your application."). By their terms, the Commissioner's regulations set the minimum time period for development of a claimant's medical history. The court in *Davidson* held that "medical opinions may not be ignored just because they predate the disability onset date." *Davidson*, 164 F. Supp. 3d at 941–42 (agreeing with the conclusions from other circuit courts—the 1st, 6th, 7th, 8th, and 10th—that "an ALJ may not simply ignore medical opinions because they pre-date the onset of disability or post-date the last insured date, since that evidence can be relevant to a claim of disability."). Although the issue in *Davidson* concerned the medical opinion of a treating physician, the court reasoned, in review of 20 C.F.R. § 404.1527(c)(2) (eff. until March 26, 2012), that an "ALJ is required to consider *all medical opinions* in the record" and that the "regulations do not provide any exception to that requirement for opinions that pre-date a claimant's onset date." *Id.* at 941 (emphasis in original).

The regulations that were effective when Banks filed her claim similarly state that the Commissioner will evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). Further, as discussed below, the medical opinions of Drs. Campbell and Ghia are relevant to the ALJ's assessment of Banks' RFC because the opinions discuss Banks' mental limitations and how those limitations may impact her ability to work. Although an ALJ is entitled to determine the credibility of medical experts and weigh their opinions, the ALJ's decision should show that the medical opinions were considered, but ultimately rejected. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (upholding the ALJ's decision when it showed he carefully considered, but ultimately rejected, the treating physician's conclusions). Accordingly, the ALJ erred when he

seemingly ignored the medical opinions of Drs. Campbell and Ghia that were also contained in the administrative record. *See Osborn v. Berryhill*, No. 3:16-CV-44-B-BN, 2017 WL 2312910, at *9 (N.D. Tex. May 11, 2017) (concluding that the ALJ erred when he failed to discuss the state agency consultant's medical opinion), *adopted by*, No. 3:16-CV-44-B-BN, 2017 WL 2306581 (N.D. Tex. May 26, 2017); *Stoll v. Colvin*, No. 3:14-CV-1239, 2015 WL 233312, at *5 (N.D. Tex. Jan. 16, 2015) ("Even in the case of a non-treating physician . . . the ALJ may not ignore medical opinions and must explain in his decision the weight that the ALJ gives to those opinions"); *see also Castleberry v. Berryhill*, No. 4:16-CV-3104, 2017 WL 7796206, at *12 (S.D. Tex. Oct. 3, 2017) ("It was error, moreover, for the ALJ to completely ignore the opinion of Dr. Sahi, another consultative examining physician."), *adopted by*, No. 4:16-CV-3104, 2017 WL 7796189 (S.D. Tex. Nov. 1, 2017).

**B.     Although Drs. Campbell's and Ghia's medical opinions were both relevant, only the failure to consider Dr. Campbell's opinion was not harmless.**

Banks contends that the ALJ's failure to weigh, discuss, or mention Drs. Campbell's or Ghia's medical opinions is harmful error because those opinions provided limitations that are contrary to the ALJ's RFC, and the Court, therefore, cannot conclude that if the ALJ had considered the opinions he would have reached the same result. (ECF No. 15 at 12). The Commissioner contends that Drs. Campbell's and Ghia's medical opinions are consistent with the ALJ's assessment so any error resulting from his failure to weigh them is harmless. (ECF No. 18 at 7–8).

The Fifth Circuit has held that the harmless error doctrine applies in Social Security disability cases. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998). "Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). "[H]armless error exists

when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Davidson*, 164 F. Supp. 3d at 944 (citing *Bornette v. Barnhart*, 466 F. Supp. 2d 811 (E.D. Tex. 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir.2003))).

### i. Dr. Campbell's medical opinion

Dr. Campbell conducted a mental status examination of Banks on June 20, 2011. (Tr. 400). She observed that Banks appeared mildly disheveled due to her being late to the appointment and that she was calm, cooperative, and alert, but exhibited moderately diminished psychomotor activity. (Tr. 403). Although Dr. Campbell observed she was depressed with blunted affect, her "[t]hinking was logical, coherent, and relevant within the context of some vague paranoia." (*Id.*). Further, Dr. Campbell stated Banks was fully oriented with average intelligence. (*Id.*). Dr. Campbell diagnosed Banks with PTSD and dysthymic disorder with features of anxiety, and provisionally diagnosed her with panic disorders with agoraphobia. (Tr. 404). Further, Dr. Campbell opined that Banks' prognosis was "[p]oor" and that her "overall functioning . . . is unlikely to improve . . . given her reported history of depression." (Tr. 405). Dr. Campbell stated that although Banks initially reported responding well to psychotropic intervention, Banks perceived its effectiveness as reaching a plateau. (*Id.*). Contrary to the ALJ's RFC, Dr. Campbell opined that "[at] the present time[,] due to Banks' subjective feelings of distress, she will have difficulty functioning on a job and interacting appropriately with coworkers." (*Id.*).

### ii. Dr. Ghia's medical opinion

Dr. Ghia conducted a Psychiatric Review Technique ("PRT") and Mental RFC assessment on August 2, 2011 that incorporated Dr. Campbell's consultative examination as well as a psychiatric evaluation from December 27, 2010. (Tr. 416–29, 428, 438–41). As for the PRT, she found that Banks suffered from an affective disorder (12.04—dysthymic disorder) and an anxiety

related disorder (12.06—PTSD; panic disorders). (Tr. 419, 421). She also found that these disorders mildly affected her activities of daily living; moderately affected her ability to maintain social functioning and concentration, persistence, or pace; but no limitation due to episodes of decompensation. (Tr. 426). Dr. Ghia found no marked or extreme limitations and determined the evidence did not establish the presence of "C" criteria. (Tr. 419–20). According to the Commissioner's Programs Operations Manual System ("POMS"), C Criteria are used to evaluate mental disorders that are "serious and persistent." POMS § DI 34001.032G. Finding none, Dr. Ghia concluded that the medical evidence of record did not "reflect a degree of mental/emotional signs or symptoms that would significantly or wholly compromise [Banks'] capacity for work related abilities." (Tr. 428). Additionally, Dr. Ghia concluded in her Mental RFC assessment that Banks could understand, remember, and carry out detailed but not complex instructions. (Tr. 440). The Court notes that although Dr. Ghia's opinion is not cited to in the ALJ's decision, her Mental RFC conclusion is part of the ALJ's RFC assessment. (Tr. 19) ("The claimant can understand, remember, and apply detailed instructions . . . ."). Nowhere else in the record is there a Mental RFC.

### iii. Dr. Gallagher's medical opinion

In making his RFC assessment, the ALJ cited to, but without explicitly weighing, the findings of consultative psychologist Sheree Gallagher, Psy.D. (Tr. 22). The ALJ noted that Dr. Gallagher diagnosed Banks with PTSD and major depressive disorder and opined that she would likely have difficulty coping with her psychological symptoms without further intervention. (*Id.*). In her mental status evaluation of Banks on July 7, 2015, Dr. Gallagher observed that Banks was alert, attentive, and not easily distracted. (Tr. 529–30). Although Dr. Gallagher observed Banks' mood was dysthymic with low energy, she observed that her "[t]hought process was lucid, logical,

and concrete" (Tr. 530). And Banks' short and long-term memory appeared "grossly intact." (*Id.*). Further, Dr. Gallagher opined that Banks' prognosis for recovery from PTSD and major depressive disorder was "guarded," while noting she had not engaged in psychotherapy to address either diagnosis. (Tr. 531). Dr. Gallagher opined that Banks would "continue to experience symptoms of depression as psychosocial stressors, such as physical pain, unemployment, and financial constraints, persist." (*Id.*).

    iv.    **Drs. Marler's and Schade's medical opinion**

The ALJ also considered the opinions of SAPCs Don Marler, Ph.D. and Mark Schade, Ph.D. (Tr. 22). Each SAPC conducted PRTs—SAPC Marler on August 6, 2016 and SAPC Schade on January 1, 2016—and made findings about Banks' mental disabilities. (*Id.* 52–57, 62–67, 74–80, 89–97). Each SAPC found that Banks' anxiety disorders were nonsevere; Banks suffered from an affective disorder (12.04) and anxiety related disorders (12.06); and that these disorders mildly affected her activities of daily living and social functioning and concentration, persistence, or pace; but cited no limitations due to episodes of decompensation. Each SAPC found no marked or extreme limitations and determined the evidence did not establish the presence of "C" criteria. Moreover, SAPC Schade opined that Banks was only marginally limited by her psychiatric symptoms and that they did not substantially compromise her ability to function independently, appropriately, and effectively on a sustained basis. (Tr. 80, 97). The Court notes that SAPC Schade included in his explanation that he considered Dr. Gallagher's and Dr. Campbell's medical opinions as well as Banks' medical records from December 26, 2010. (Tr. 79–80). Ultimately, however, the ALJ gave little weight to SAPC Marler's and Shade's opinions because he concluded that Banks' mental impairments imposed more than minimal limitations on her functional capacity. (Tr. 22).

11

### v. Other evidence relied upon by the ALJ

The ALJ also noted hospital records from June 10, 2015 indicating Banks' normal mood, affect, and behavior and that she was taking medication to manage her psychological symptoms. (Tr. 556–57). Shortly thereafter in August, Banks indicated in a follow-up appointment that an "episode had started more than 1 month ago." (Tr. 559). At that time, Banks' medical records showed that she was taking one 50mg tablet of Zoloft once daily, (Tr. 561), but that her dosage was increased to 100mg on December 21, 2015. (Tr. 573). The ALJ noted during another follow-up appointment on August 9, 2016 that Banks was successfully taking medication (100mg of Zoloft) to control her depression. (Tr. 587). The medical notes reflected that Banks' "[m]ood [was] good" and indicated that she was not seeing a psychiatrist and declined a referral to a psychiatrist. (*Id.*).

Relevant to Banks' mental disabilities and their impact on her ability to concentrate, the ALJ noted hearing testimony where Banks stated that she reads eight to ten books a month and that, when she could not sleep, she may read up to ten hours a day. (Tr. 41). Further, the ALJ noted Banks' testimony that indicated her mental disorders impaired her ability to interact with others while in crowded areas where she is likely to have a panic attack. (Tr. 22). Although the ALJ did not cite to the particular testimony, Banks characterized her symptoms towards other people as "inappropriate thoughts" that makes her want to leave, especially "[i]f there's small children acting out, hollering; if there's too many people, I have to leave." (Tr. 46). Banks testified that when she feels claustrophobic, she is more likely to have a panic attack and that the panic attacks frequently occur while she is on a freeway. (*Id.*).

vi.   **Harmless error analysis**

The ALJ's decision was supported by relevant medical opinions, testimony, and other evidence in the record. The question here, though, is whether it is inconceivable that a different administrative conclusion would have been reached by the ALJ had he considered the medical opinions of Drs. Campbell and Ghia. Notably, neither party has argued that those medical opinions are from a treating physician or contest that the medical opinions that were considered by the ALJ in his decision were not from medical experts. Thus, the holding in *Newton* is not applicable. *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009) (per curiam) (limiting the holding in *Newton* to cases where the ALJ rejects the sole relevant medical opinion in favor of a non-specialty medical expert who had not examined the claimant).

a. **The ALJ's failure to consider Dr. Ghia's medical opinion was harmless.**

Banks contends that because the ALJ's RFC assessment contradicts some of the limitations cited in Dr. Ghia's Mental RFC, then the error is not harmless. (ECF No. 15 at 11). Banks points to the "Summary Conclusions" of Dr. Ghia's Mental RFC where she checked boxes indicating that Banks was moderately limited in her ability to, among others, maintain attention and concentration for an extended periods; work in coordination with or proximity to others without being distracted by them; maintain regular attendance and be punctual within customary tolerances; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and responding appropriately to changes in the work setting. (Tr. 438–439). These limitations are from the Summary Conclusions section of Dr. Ghia's Mental RFC and were, presumably, used by her to assess Banks' Mental RFC. *Skiles v. Colvin*, No. 4:12-CV-418-Y, 2013 WL 3486921, at *8 (N.D. Tex. July 11, 2013). There is, however, "nothing in the [C]ommissioner's regulations or

13

rulings that requires an ALJ to make findings concerning each of the limitations listed on [Section I] of the 'Summary Conclusions' portion of the [MRFC] forms." *Rollison v. Colvin*, No. 5:15-CV-230-BQ, 2017 WL 666115, at *4 (N.D. Tex. Jan. 6, 2017) (quoting *Huber v. Astrue*, No. 4:07–CV–477–A, 2008 WL 4694753, at *7 (N.D. Tex. Oct.22, 2008), *adopted sub nom. Rollison v. Berryhill*, No. 5:15-CV-230-C, 2017 WL 666106 (N.D. Tex. Feb. 17, 2017). Indeed, the Commissioner's POMS states that "Section I is merely a worksheet to aid in the in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment," and Section III is where the "actual mental RFC assessment is recorded, explaining the conclusions indicated in [S]ection I . . . ." POMS § DI 24510.060B.2, B.4. In Section III of Dr. Ghia's Mental RFC assessment, she concluded that Banks could understand, remember, and carry out detailed but not complex instructions. (Tr. 440). Notably, the ALJ's RFC incorporated Dr. Ghia's conclusion that stated Banks could "understand, remember, and apply detailed instructions . . . ." (Tr. 19).

Moreover, other record evidence cited and discussed by the ALJ is significantly consistent with Dr. Ghia's medical opinion. Drs. Ghia, Marler, and Schade all concluded in their PRTs that Banks was not markedly limited by either of her mental disorders and that the evidence did not establish her mental disorders were serious and persistent. Further, Dr. Ghia found that Banks' mental limitations would not significantly or wholly compromise her capacity for work related abilities. This finding is similar to SAPC Shade's finding that Banks' mental symptoms would not compromise her ability to function independently, appropriately, and effectively. Thus, the Court concludes that Dr. Ghia's conclusions are consistent with the medical opinions the ALJ relied upon in making his RFC determination. Accordingly, the ALJ's failure to weigh, discuss, or mention Dr. Ghia's medical opinion is harmless error.

### b. The ALJ's failure to consider Dr. Campbell's medical opinion was not harmless.

Banks contends that Dr. Campbell's medical opinion contradicts the ALJ's RFC assessment and therefore cannot be harmless. (ECF No. 15 at 11). The Court agrees. Dr. Campbell opined that "[at] the present time[,] due to Banks' subjective feelings of distress, she will have difficulty functioning on a job and interacting appropriately with coworkers." (Tr. 405). The ALJ's RFC assessment states, in part, that Banks could "respond and *interact appropriately to supervisors, coworkers*, and respond appropriately to work pressures and changes in work setting." (Tr. 19) (emphasis added). Thus, Dr. Campbell's opinion contradicts the ALJ's RFC assessment concerning Banks' ability to interact with coworkers.

The Commissioner argues, however, that because Dr. Campbell's medical opinion pre-dated Banks' alleged onset date and the ALJ relied upon other medical evidence during Banks' period of disability, then the ALJ's RFC assessment is supported by substantial evidence and the Commissioner's decision should be affirmed. (ECF No. 18 at 8–9). The Commissioner cites to Dr. Gallagher's medical opinion, among other observations, as substantial evidence in support of the ALJ's RFC assessment. (*Id.*).

The Court agrees with the Commissioner that much of Dr. Gallagher's medical opinion is consistent with Dr. Campbell's medical opinion. Both Drs. Campbell's and Gallagher's opinions indicated that they expected Banks to continue experiencing symptoms as they are associated with her physical health and unemployment. (*See* Tr. 404, 531). Further, Dr. Campbell's prognosis stated that Banks would have "difficulty functioning on a job and interacting appropriately with coworkers" due to her present feelings of distress. (Tr. 405). This prognosis is not inconsistent with Dr. Gallagher's "guarded" prognosis and her opinion that Banks' mental impairments would persist unless further intervention was sought. (Tr. 531). Notwithstanding these similarities, the

ALJ contradicted Dr. Campbell's medical opinion when he concluded in his RFC assessment that Banks *could* interact appropriately with coworkers. Because there is no discussion from the ALJ resolving this apparent inconsistency, then the fact that the ALJ failed to discuss, cite, or even mention Dr. Campbell's medical opinion "makes it impossible to know whether the ALJ properly considered and weighed [the] opinion, which directly affect[ed] the [ALJ's] RFC determination." *Kneeland*, 850 F.3d at 761. Further, the ALJ did not pose a hypothetical question to the vocational expert at Banks' hearing that incorporated Dr. Campbell's medical opinion. Thus, if the ALJ had considered Dr. Campbell's opinion that Banks would have difficulty interacting appropriately with coworkers, then it is not inconceivable that the ALJ would have reached a different result. Accordingly, the ALJ's error was not harmless and remand is appropriate. *Id.* at 762.

Because the legal error the ALJ committed was not harmless, the Court **REVERSES** the Commissioner's decision and **REMANDS** the case for further proceedings.

SIGNED December 11, 2018.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE